# IN THE COURT OF APPEALS OF IOWA

―――――――――――

No. 25-0955
Filed July 22, 2026

―――――――――――

**In the Matter of the Estate of Vera J. Krull**

**Kristi Ruzicka and James Ruzicka,**
Executors–Appellants.

―――――――――――

Appeal from the Iowa District Court for Grundy County,
The Honorable Thomas A. Bitter, Judge.

―――――――――――

**AFFIRMED**

―――――――――――

Chad R. Frese of Frese & Waters, LLP, Marshalltown, attorney
for appellants.

Nathan J. Schroeder of JSC Legal, PLC, Cedar Falls, attorney for appellees.

―――――――――――

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

Executors Kristi and James Ruzicka appeal from an order that set their fees and the fees of their attorney below the maximum allowed by statute for ordinary services. Finding no abuse of discretion in the fees awarded, we affirm.

## I.  Background Facts and Proceedings

Kristi Ruzicka's mother, Vera Krull, died on November 9, 2019. Vera's will was admitted to probate in March 2020, and Kristi and her husband James were appointed as executors. They designated attorneys Barry Kaplan and James Goodman[1] to assist in the administration of the estate.

Three months after the will was admitted to probate, Kristi's sister—Cheryl Mercuri—filed a will contest. The Ruzickas hired a different attorney to represent them in that action, which was resolved by a family settlement agreement in August 2022. The agreement provided that the parties would "be responsible for their own litigation costs, expenses and attorney fees" and that Kristi and James would "not seek reimbursement from Vera's Estate for any such costs." Kristi and James were allowed to continue as executors under the agreement and to seek fees for ordinary services under Iowa Code section 633.197 (2020). The agreement permitted the other parties "to file an objection to the application for fees, request itemization of their time and a description of services, and request a hearing."

After the agreement was approved by the court, the parties sold the primary asset of the estate—a 117-acre farm—in April 2023. Under the agreement, the net proceeds from the sale ($2,135,392.07) were to be divided

---

[1] Goodman was retained by Kaplan's firm to prepare the estate's tax returns and handle related issues.

between Cheryl and three of Vera's grandchildren. Partial distributions were made to those beneficiaries after the sale, with more than $100,000 retained by the executors and their attorney for the estimated costs to close the estate.

The estate remained open for almost two years after the farm sale, with little activity beyond requests to extend the time to file the final report. The final report was filed in January 2025, along with an amended inventory that increased the previously estimated value of the farm from $700,000 to $1,278,800 pursuant to an appraisal of the value on Vera's date of death. The Ruzickas requested a "statutory fee" of $27,525.90 to be equally divided between them for their services as executors, and their attorney requested the same for his services.[2]

Cheryl and the three grandchildren objected to the fee requests, arguing "this was not a complicated estate to manage." At the hearing on the fee requests and final report in May 2025, Kristi testified that she and Kaplan agreed they would request the statutory maximum for their fees. Although Kristi submitted an itemized statement from Kaplan's firm for $12,405, plus expenses of $183.93, she testified that statement did not include all her meetings and phone calls with Kaplan. Kristi also submitted an itemized statement for the services that she and James rendered to the estate, but it included time they spent on the will contest, plus an unspecified number of hours for "reading 100 plus emails and replies" and "mental stress."

The probate court denied the requests for the maximum statutory fees and instead awarded $7,500 to the Ruzickas for their services as executors and $12,000 to their attorney. The Ruzickas appeal.

---

[2] Kaplan withdrew as the attorney for the estate in January 2025, and another attorney at his firm—Chad Frese—entered an appearance.

## II.    Standard of Review

We review the award of executor and attorney fees de novo. *In re Est. Bockwoldt*, 814 N.W.2d 215, 221 (Iowa 2012). Although our review is de novo, we recognize the probate court has "considerable discretion" in allowing compensation to executors and their attorneys. *In re Est. of Engelkes*, 127 N.W.2d 111, 113 (Iowa 1964). The exercise of that discretion must be reasonable and not arbitrary. *Id.*

## III.    Analysis

Iowa Code sections 633.197 and .198 set the maximum fee for ordinary services for all but small estates at "two percent of the gross estate assets, excluding joint tenancy assets excluded from the taxable estate and life insurance payable to a designated beneficiary." *Est. of Randeris v. Randeris*, 523 N.W.2d 600, 606 (Iowa Ct. App. 1994); *see also* Iowa Ct. R. 7.2(2). While it is "common for the maximum ordinary fee allowed by statute to be requested and approved by the court," the probate court must determine whether the fees requested are reasonable. *Randeris*, 523 N.W.2d at 607 ("[T]he law imposes a standard of reasonableness in the determination of fees for ordinary services and burdens the court with the responsibility to resolve the question.").

The burden of showing the services rendered and the value of those services rests upon the party seeking the fees. *Engelkes*, 127 N.W.2d at 113; *see also* Iowa Ct. R. 7.2(2) (requiring those seeking ordinary fees to provide "proof of the nature and extent of responsibilities assumed and services rendered"). Factors to be considered in determining the reasonableness of the requested fees include "the competence and efficiency exercised in the estate, size of the estate, actual time devoted to the estate, nature and difficulty of the services performed, fee customarily charged for similar

services, results obtained, and experience of the attorney or executor." *Randeris*, 523 N.W.2d at 607; *see also In re Est. of Simon*, 288 N.W.2d 549, 552 (Iowa 1980).

The Ruzickas argue that the probate court ignored these factors, as well as Kristi's testimony that she had an agreement with the attorney for a two percent fee. We disagree. The court not only discussed and applied the applicable factors but also rejected the executors' argument about their fee agreement. On the latter issue, the court wrote that it "[did not] question that there was an oral agreement for the attorney to charge two percent, as permitted in Iowa Code § 633.197 and § 633.198." But it explained that "too often, attorneys use the 'two percent' structure as the fee they've actually earned" even though they are only "entitled to a reasonable fee for the services they provided, which fee shall not exceed two percent of the value of the gross estate."

The court was right about the law. As our supreme court said decades ago in *Simon*, "we do not have a 'statutory fee' of certain percentage of estate assets" in Iowa. 288 N.W.2d at 551. Instead, the "Iowa statutory probate fee is the reasonable value of the services rendered. The statutory percentages come into play only as the ceiling on fees for ordinary services." *Id.*; *see also Engelkes*, 127 N.W.2d at 114 (rejecting the contention that the statutory percentages are "the minimum, as well as the maximum fee allowable"). "There is no requirement that the court allow the statutory percentages in any case." *Engelkes*, 127 N.W.2d at 114 (citation omitted); *see also In re Est. of Rorem*, 66 N.W.2d 292, 296 (Iowa 1954) (finding the court was not required to allow the amounts executors had contracted to pay their attorneys). Thus, the Ruzickas and their attorney are not automatically entitled to the statutory maximum as they seem to assert on appeal.

On the reasonableness of the fees requested for the executors' attorney, the probate court found:

> There was a Will contest filed, but Attorney Kaplan apparently did not handle that matter. The Will contest was eventually resolved by agreement, and a Family Settlement Agreement (FSA) was drafted and executed. Apparently, Attorney Kaplan did not draft the FSA.
>
> Attorney Kaplan did not prepare any tax returns or deal with any inheritance tax issues. Attorney James Goodman's name appears in the Kaplan billing invoices as early as May 2020. According to Exhibit 7, Attorney Goodman even drafted the Final Report.
>
> . . . .
>
> The Court finds that reasonable compensation in the amount of $12,000 is warranted for legal services provided by Attorneys Kaplan and Frese and their office.

As for the reasonableness of the executors' requested fees for their services, the court reasoned:

> Exhibit A is an unsigned document that seems to be a log of time spent by the executors. It does not contain a total, and some of the entries do not list any time spent. For some entries, it appears that only Kristi was involved. For some entries, only James (Jim) was involved. For some entries, they were both involved. For those entries when both were involved, the Court gave them both credit for the time listed. The total number of hours comes to 150.9 between the two of them. (It should be noted that some of the time is clearly attributable to the Will contest. . . .) Giving the executors the benefit of the doubt, and taking into consideration how long the estate has been open, a total executor fee of $7,500 is deemed to be fair and reasonable. That fee, when factored over the whole 150.9 hours, is nearly $50 per hour.

The probate court weighed the appropriate factors, including those highlighted by the Ruzickas on appeal. Considering the services provided by Kaplan and the limited evidence provided by the executors on the work they

performed outside the will contest, we find no abuse of the court's considerable discretion in its award of executor and attorney fees.

**AFFIRMED.**